UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LETISIA WARD, | : | |
| Plaintiff, | : | |
| V. | : | CASE NO. 3:05-CV-804(RNC) |
| UNIVERSITY OF CONNECTICUT, et al., | : | |
| Defendants. | : | |

RULING AND ORDER

Plaintiff, an African-American female, brings this employment discrimination case against her former employer, the University of Connecticut ("UCONN"), and two of its employees, Jonathan Morell and Wendy Salisbury, claiming that she was discharged from her employment as a payroll clerk in the facilities department because of her race and gender in violation of federal and state law. Defendants have moved for summary judgment contending that the plaintiff cannot carry her burden of proving that the discharge was tainted by unlawful discrimination. The record, viewed most favorably to the plaintiff, presents genuine issues of material fact with regard to her Title VII claim of discriminatory discharge but not with regard to her other claims. Accordingly, the motion for summary judgment is granted in part and denied in part.

I. Legal Standard

Summary judgment is inappropriate unless there is no "genuine issue as to any material fact" and the movant is

"entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of material fact. The court's function is not to decide genuine issues of material fact but simply to determine whether such an issue exists. See Gallo v. Prudential Residential Services, Ltd. Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994).

When the parties' submissions in support of and opposition to a motion for summary judgment show the existence of a factual dispute, the court must decide whether the disputed issue of fact is material and, if so, whether the dispute is genuine. A factual dispute is material if it must be resolved in order to adjudicate an essential element of the claim or defense that is the subject of the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(factual disputes preclude summary judgment only if they might affect the outcome of the suit under governing law). A factual dispute is genuine if the evidence in the record, viewed in a light most favorable to the nonmoving party, would permit a reasonable jury to decide in favor of that party. See id. Consistent with this standard, all evidence favorable to the nonmoving party must be credited if a reasonable jury could credit it. Evidence favorable to the moving party, on the other hand, must be disregarded unless a reasonable jury would have to credit it because it comes from a disinterested

source and is uncontradicted and unimpeached.  See <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 150-51 (2000)(discussing identical standard governing motion for judgment as a matter of law under Rule 50).

Bald assertions unsupported by admissible evidence are insufficient to create a genuine issue of fact.  <u>D'Amico v. City of New York</u>, 132 F.3d 145, 149 (2d Cir. 1998).  However, if there is any evidence from which a jury could draw a reasonable inference in favor of the nonmoving party on an issue of material fact, summary judgment may not be granted.  See <u>Kerzer v. Kingly Manufacturing</u>, 156 F.3d 396, 400 (2d Cir. 1998).  Properly applied, this standard preserves the fundamental right to trial by jury in civil cases.  In employment discrimination cases, which involve the employer's motivation for the challenged employment action, a trial court must be especially cautious about granting summary judgment.  See <u>Gallo</u>, 22 F.3d at 1224.  In close cases, when the plaintiff presents some evidence of discrimination, justice is best served by having jurors resolve the issue of the employer's motivation based on their collective assessment of all the evidence presented at a trial in open court.  Permitting marginal cases to go to trial is costly.  But a judge's resolution of the issue of the employer's motivation based on a review of a paper record cannot be substituted for a jury trial when there is a genuine issue of material fact.

II. Background

Plaintiff was terminated from her employment as a payroll clerk in the facilities department at UCONN just days before she was to have completed a six-month probationary period. She was the only minority female in the workplace. She was replaced by a white male. The person who recommended that the plaintiff's employment be terminated was her direct supervisor, defendant Wendy Salisbury. Salisbury is the same person who recommended that the plaintiff be hired. Salisbury's recommendation to terminate the plaintiff's employment was accepted by the formal decisionmaker, Eugene Roberts. Salisbury has testified that plaintiff's employment was terminated because of persistent performance problems relating to her attitude and personality, which caused others to complain repeatedly that the plaintiff was rude, arrogant, unhelpful and uncommunicative. Plaintiff requested a review of the termination by an impartial hearing officer. No claim of discrimination was raised at the time. The hearing officer determined that the termination was not arbitrary or capricious. After exhausting administrative remedies, plaintiff brought this suit.

Plaintiff denies that she had any performance problems. She has testified that she got along professionally with all her co-workers, including Salisbury, and that she received no counseling about performance problems before the discharge. Plaintiff also

4

offers other evidence of pretext besides her own testimony.  The
performance evaluation used to justify her discharge was the
product of at least three drafts.  The first draft, which
Salisbury prepared, indicated that plaintiff's performance was
mostly "good" and her interpersonal skills were "fair."  Rene
Boggis of the Human Resources Department encouraged Salisbury to
make the evaluation "stronger" - meaning more negative.  Boggis
counseled Salisbury, "If you are letting her go because she is
not working out you should spell that out . . . the employee (if
in a protective [sic] class) could take [the discharge] to the
CHRO.  At this point you would want to be able to defend your
drop, with a well defined evaluation, which outlines the
employees [sic] unsatisfactory performance."  After receiving
Boggis's input, Salisbury downgraded the performance evaluation
and rated plaintiff's interpersonal relations "unsatisfactory."
In addition, there is some evidence that Salisbury has overstated
the complaints she received about the plaintiff in that some co-
workers recall making fewer complaints about the plaintiff than
Salisbury has described.

    Plaintiff claims that Salisbury recommended the discharge
under pressure from defendant Jonathan Morell, a supervisor with
whom Salisbury had a good working relationship.  Another
supervisor, Tom Gaffey, has testified that after plaintiff was
discharged, he heard Morell say, in reference to the plaintiff,

5

"I fucking hate that fucking nigger bitch." Al Chapman, a co-worker in the facilities department, has testified that he overheard Morell refer to the plaintiff as a "black bitch" after she made an alleged error on a payroll. In light of this evidence, plaintiff contends that a jury could find that the discharge was tainted by discrimination based on race and sex.

Salisbury denies that she spoke with Morell about the decision to terminate plaintiff's employment. It is undisputed, however, that Morell complained repeatedly to Salisbury about the plaintiff's personality and attitude, and that Salisbury was the one to whom he usually vocalized his frequent complaints about the plaintiff. Moreover, there is some evidence that Salisbury and Morell encouraged complaints about the plaintiff. According to Gaffey, Morell came into his office and stated, in the presence of another person (Mike Pacholski), "something about [the plaintiff] and that Salisbury wants to get rid of her so if you got any problems with [the plaintiff], go see [Salisbury]."

III. Discussion

A. CFEPA

Plaintiff sues under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-58, et seq. UCONN contends that it is entitled to summary judgment with regard to plaintiff's CFEPA claims on the ground that it is immune from suit. Plaintiff concedes the point. (Pl.'s Mem. Opp.

6

Summ. J. 18 n. 4.) Accordingly, plaintiff's CFEPA claims are dismissed for lack of subject matter jurisdiction.

B. <u>Section 1981</u>

Plaintiff brings a claim of employment discrimination under 42 U.S.C. § 1981. A claim against a state actor for violating rights guaranteed by § 1981 must be brought under 42 U.S.C. § 1983. <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 735 (1989). Accordingly, summary judgment is granted as to plaintiff's claims under § 1981.

C. <u>Title VII</u>

Under Title VII, a claim of discriminatory discharge is analyzed using the familiar burden-shifting framework established in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973). Plaintiff has the initial burden of presenting a prima facie case by showing that: (1) she is a member of a protected class; (2) was qualified for the position she held; and (3) was discharged (4) in circumstances giving rise to an inference of discrimination. <u>See</u> <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 567 (2d Cir. 2000). The burden on the plaintiff at this stage is minimal. <u>James v. New York Racing Ass'n</u>, 233 F.3d 149, 153 (2d Cir. 2000). Once this burden is satisfied, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the discharge. <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802. After such a reason is provided, the presumption of discrimination "drops out

7

of the picture." Saint Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). Plaintiff then has the burden of proving that the articulated reason is a pretext for discrimination. On a motion for summary judgment, the court must examine the entire record to determine whether the plaintiff can carry her burden of proving that the defendant intentionally discriminated. Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000).

UCONN argues that the plaintiff cannot make the showings required to satisfy the second and fourth prongs of a prima facie case. The argument is without merit. Plaintiff has met her burden under the qualification prong, which merely requires a showing that she possessed the basic skills necessary for the position. See Slatterly v. Swiss Reinsurance America Corp., 248 F.3d 87, 91-92 (2d Cir. 2001); Gregory v. Daly, 243 F.3d 687, 696 (2d Cir. 2001). Moreover, the fact that plaintiff was replaced by a white male is sufficient to meet her minimal burden under prong four. See, e.g., Schnabel, 232 F.3d at 87.

UCONN's explanation that the plaintiff was discharged due to performance problems satisfies its burden of articulating a nondiscriminatory reason for the discharge. The evidence summarized earlier, viewed most favorably to the plaintiff, is at least marginally adequate to support a finding that UCONN's explanation for the discharge is not entirely true and that plaintiff's race and sex played a role in the decision to

discharge her.

UCONN emphasizes:

(1) that stray remarks of a nondecisionmaker cannot alone prove a claim of employment discrimination. See Rose v. New York City Board of Education, 257 F.3d 156, 162 (2d Cir. 2001)(age-related comments constituted direct evidence of discrimination because they were made by a supervisor with "enormous influence in the decision-making process").

(2) that there is no direct evidence of Morell's alleged influence on the termination decision. See Brown v. AstraZeneca Pharm., L.P., No. CV-03-6166(DGT), slip op. at *8, 2006 WL 2376380 (E.D.N.Y. Aug. 16, 2006);

(3) that a jury would reject Gaffey's testimony as incredible;

(4) that "when the person who made the decision to fire [is] the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire. This is particularly so when the firing has occurred only a short time after the hiring." Grady Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997); and

(5) that the pool of candidates to replace the plaintiff consisted exclusively of white males.

These points have force. But the bias of a nondecisionmaker can taint an employment decision when the biased individual plays

9

a meaningful role.  See Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 125-26 (2d Cir. 2004).  In this case, Morrell's role is not clear.  Viewing the evidence in a light most favorable to the plaintiff, however, a jury could find that he participated in the decision to discharge the plaintiff, if not directly, then by complaining to Salisbury himself on numerous occasions and specifically encouraging others to complain.  If Morrell's animus toward the plaintiff was motivated by her race or sex, and Salisbury acted on the basis of the complaints Morrell made and encouraged, a reasonable jury could conclude that the discharge was based in part on unlawful discrimination.

In short, the record presents genuine issues of material fact concerning whether the proffered reason for the discharge is pretextual, whether Morrell made the racist remarks attributed to him, whether Morrell wanted the plaintiff removed because of her race or sex, and whether he played a decisive role in the termination decision.  By no means would a jury have to resolve these issues in favor of the plaintiff.  If a jury were to do so, however, it could conclude that the termination decision was motivated at least in part by the plaintiff's race and gender. Accordingly, summary judgment is inappropriate.  See Holcomb v. Iona College, 521 F.3d 130, 141-44 (2d Cir. 2008).

V.  Conclusion

The motion for summary judgment [doc. # 49] is hereby granted in part and denied in part.

So ordered this 30th day of September 2008.

>                    /s/ RNC
>             Robert N. Chatigny
>         United States District Judge